UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REEFERTEK USA CORP. AND
MICHAEL LEIBMAN,

                              Plaintiffs.

                - against -

FUCHS ENTERPRISES, INC., d/b/a/
REEFERTEK NORTHEAST, JOSEPH FUCHS AND
JOHN DOES 1 TO 10.

                              Defendants.

**COMPLAINT**

JURY TRIAL DEMANDED

15 CV 6433

Plaintiffs ReeferTek USA Corp. ("RT") and Michael Leibman ("Leibman," and together with RT, "Plaintiffs"), by their attorneys Arent Fox LLP, as and for their Complaint, allege as follows:

## Nature of the Action

1.      This is an action for unfair competition, false designation of origin, and false advertising under the Laws of the United States (Trademark Act of 1946, 15 U.S.C. §§ 1051 *et. seq.*); for common law trademark infringement and unfair competition under New York state law; for beach of license agreement; and for tort under New York state law.

2.      Plaintiffs developed and created a customized method of converting vans into refrigerated vehicles.  The process developed by Plaintiffs is cutting edge, cost effective and efficient, and is sought after anyone who requires refrigerated vehicles.  Plaintiffs also advertise and promote their conversion method and services, and the ReeferTek name and brand.  As such, Plaintiffs market the ReeferTek name and technology throughout the United States and license their brand and technology.  The ReeferTek brand has become distinctive and well known to the public to be associated with RT and its technology.

- 1 -

3.      Among RT's licensees was Defendant Fuchs Enterprises, Inc. ("FEI"), which is owned and operated by Defendant Joseph Fuchs ("Fuchs," and together with FEI, the "Defendants").  FEI breached the license agreement with RT, including by misusing and disparaging the ReeferTek name and marks; using the ReeferTek name and marks beyond the geographic area in which such use was licensed; modifying the marks and ReeferTek technology without Plaintiffs' authorization; using the ReeferTek name and marks as well derivations of the ReeferTek name and marks for vehicles that do not employ the ReeferTek technology or system; and failing to account for and to make contractually required license payments.

4.      By letter dated August 7, 2015, RT terminated FEI's license agreement.  Despite termination of the license agreement, FEI continues to wrongfully market and sell refrigerated vehicles using (and misusing) the ReeferTek name and marks and their derivations.

5.      By way of this action, Plaintiffs seek preliminary and permanent injunctive relief directing FEI and Fuchs to:  (i) immediately cease and desist from holding FEI out as a ReeferTek dealer, distributor, up-fitter or as being in any way associated with the ReeferTek name, brand and technology; (ii) immediately cease and desist from using the licensed marks; and (iii) immediately cease and desist from making disparaging and/or defamatory statements about Plaintiffs.  The action also seeks damages for violation of federal and state unfair competition statutes, failure to pay license fees and other breaches of contract.  Plaintiffs also seek redress from Defendants for their tortious activity and defamatory statements.

## Jurisdiction And Venue

6.      This Court has subject matter jurisdiction over RT's federal law claims pursuant to 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121.  The Court has supplemental jurisdiction over

Plaintiffs' claims arising under the laws of the State of New York pursuant to 28 U.S.C. §§ 1338(b) and 1367.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because (i) this is an action brought pursuant to the Federal Trademark Act of 1946; and (ii) a substantial part of the events giving rise to the claims – including Defendants' unlawful use RT's trademarks and marks confusingly similar to RT's trademarks – occurred and is occurring in this judicial district.  Defendants also consented to jurisdiction and venue in this Court in the agreement among the parties.

8.     Upon information and belief, this Court has personal jurisdiction over each of the Defendants because, among other reasons, each resides or is headquartered in this district, and/or is engaged in substantial and ongoing business in New York and/or has caused tortious injury in New York.

### The Parties

9.     ReeferTek USA Corp. ("RT") is a New York corporation organized and existing under the laws of State of New York with its principal place of business in East Quogue, New York.

10.     Michael Leibman ("Leibman") is a resident of the State of New York and the principal of RT.

11.     Upon information and belief, Defendant Fuchs Enterprises, Inc. ("FEI") is a New York corporation organized and existing under the laws of the State of New York with an address at Copiague, New York.

12.     Upon on information and belief, Defendant Joseph Fuchs ("Fuchs") is a resident of the State of New York and owns and operates Defendant FEI.

13.     Upon information and belief, Defendants John Does Nos. 1-10 are each individuals or entities who have actively and knowingly participated and/or profited from, or otherwise are directly, contributorily, or vicariously liable for the illegal acts identified herein by FEI and/or Fuchs.

**Factual Background**

14.     Leibman holds mechanical and electromechanical engineering degrees and has extensive experience with automotive and refrigeration technology.

15.     Beginning in 1999, Leibman began modifying vehicles to make them fit for refrigeration use.  The methods employed by Leibman were unique in that they not only allow for a quick modification of a vehicle to install robust commercial-grade refrigeration systems, but also enable vehicle owners to do so without voiding the original manufacturer's warranty and while customizing the refrigeration system to specific needs and requirements.  RT conversions include vehicles build by Mercedes, Freightliner, Ford, Nissan, Chevrolet, Chrysler, among others.  The speed of a RT conversion methods allows vehicles to be out of service for very limited times.

16.     After starting operations in 2001 with his then partners, Leibman came up with the ReeferTek name and designed a number of marks, including its logo and stylized name.

17.     Vehicle conversion pursuant to the ReeferTek method was in high demand.  By 2003, the number of converted vehicles grew to 240 per year.

18.     By 2014, ReeferTek was performing conversions in more than half of the United States with licensees contemplated in the rest of the country.

19.     Specific refrigeration "upfitting" techniques employed included specially designed supporting struts, uniform insulation, seamless coat lining, a monolith membrane and

chemical and water and moisture resistant systems (hereinafter referred to as the "ReeferTek System").

20.      The ReeferTek System is fit for varying commercial uses besides food and beverage industry, including hazardous waste removal, sanitary hygiene, pest control and chemical and pharmaceutical use.

21.      The ReeferTek System produced results superior to then existing methods of refrigeration upfitting.  Accordingly, ReeferTek became synonymous with high quality refrigeration conversions that maintained original equipment to manufacturers' standards.

### ReeferTek's Marks

22.      Since long before Defendants' wrongful activities described below, ReeferTek used its name and a family of trademark and service marks to identify vehicles converted using its genuine products and methods comprising the ReeferTek System and to distinguish them from those of its competitors (collectively, the "ReeferTek Trademarks").

23.      ReeferTek Trademarks included the marks "ReeferTek," "RT," and "We make the coolest vans in the industry," for which marks RT has had registration applications pending with the United States Patent and Trademark office since March 2015.

24.      RT has invested significant sums of money in developing, improving, and promoting goods and services under its ReeferTek Trademarks.  RT has promoted and sold such goods and services to customers throughout the United States.

25.      The ReeferTek Trademarks have been and continue to be publicized through advertising in this judicial district and throughout the United States.  RT has invested substantial amounts of money in connection with such advertising.

26.      As a result of RT's efforts to promote goods and services offered under the ReeferTek Trademarks, and on account of its outstanding reputation and good will, the

ReeferTek Trademarks have become well-known to members of the public as distinctive

indicators of the source of RT's products and services.

27.     The ReeferTek Trademarks are distinctive and well-known around the United

States, including in this district.

### ReeferTek Determines To License Its Name And Technology

28.     To facilitate a national expansion, in 2014 ReeferTek initiated its licensing

program.

29.     To do so, however, a corporate reorganization and restructuring was required by

the prior owners of ReeferTek.

30.     Specifically, prior to June 2014, RT's predecessor had multiple owners and did

business as ReeferTek LLC ("RTLLC"), a New York limited liability company.  Michael

Leibman & Associates, Inc. (an entity owned and controlled by Leibman) was one of the

members of RTLLC.

31.     The restructuring ultimately vested the rights to the ReeferTek name, ReeferTek

Trademarks, goodwill and those business contacts that were outside of New York, New Jersey,

and Connecticut ("Brands and Lists") with a successor entity (RT) that would become the nation-

wide licensor of the ReeferTek name and marks.  This restructuring was accomplished by

simultaneous transactions effective as of August 1, 2014.

32.     Specifically, on or about June 23, 2014, RTLLC and defendant FEI executed an

Asset Purchase Agreement (the "APA") whereby all of the assets of RTLLC were to be

conveyed to FEI as Purchaser.

33.     In connection with the APA, FEI executed a series of documents in favor of

RTLLC owners and their affiliates, including promissory notes and an assignment of the Brands

and Lists in favor of Plaintiff RT (the "Assignment").  FEI and RT also executed a license

agreement (the "License Agreement").

34.     Under the Assignment, FEI, as Assignor, forever assigned to RT all of Assignor's

right, title and interest in the Brands and Lists.  This assignment included but was not limited to

brand names, trademarks, trade names, logos, graphics, symbols, service marks, copyrights and

related designs, whether or not registered, and including but not limited to the "ReeferTek

System", the "ReeferTek System", the "ReeferTek Support Matrix" and the proprietary formula

for the "ReeferTek Spray On Liner", as used in connection with the business of converting motor

vehicles for use as refrigerated vehicles.

35.     The Assignment to RT also covered confidential information such as customer

and vendor names and information for all geographic areas of the United States other than New

York, New Jersey and Connecticut.

36.     The License Agreement allowed FEI to customize and modify vehicles as

refrigeration vehicles and use the ReeferTek name, marks (including the ReeferTek

Trademarks), logos, graphs, trademarks, trade names, logos, graphics, symbols, service marks,

copyrights and related designs, including but not limited to, the ReeferTek System, the

ReeferTek Support Matrix, and the proprietary formula for the ReeferTek Spray On Liner in

connection with the business.  The License Agreement limited FEI's permitted activities to the

states of New York, New Jersey and Connecticut only (the "FEI Territory").

37.     In effect, the APA conveyed the entirety of seller's (RTLLC's) interest to

Defendant FEI, but the Assignment conveyed the Brands and Lists, including ReeferTek

Trademarks, to RT subject to FEI's right to operate only in the FEI Territory, as restricted in the

License Agreement.

- 7 -

**The License Agreement**

38.     By its unambiguous and clear terms, the License Agreement itself was a limited revocable grant of a license that could be terminated on notice and with or without cause. (§8.2). A copy of the License Agreement is attached at Exhibit A.

39.     The License Agreement expressly referenced, *inter alia*, the limited FEI geographical area of permitted activity and restricted FIE's use of ReeferTek name and ReeferTek Trademarks to the FEI Territory (§2.1) ; prohibited FEI from assigning or sublicensing any rights granted therein (§2.2); required FEI to use its best effort to promote the licensed vehicles being converted (§2.3); required FEI to purchase from RT all materials, supplies, and components needed for the installation of the ReeferTek System (§3.2); and required licensor to obtain advance approval of any alteration in the structure, color, size, design or quality of the ReeferTek System, or any change in the use of the ReeferTek Trademarks. (§§2.4, 5.1).

40.     The use of any other marks in combination with the RefferTek Trademarks was expressly prohibited (§5.2), and FEI was required to attach the ReeferTek Trademarks to each vehicle it upfitted. (§5.3).

41.     The License Agreement also required FEI to pay RT a sum equal to 5% of all amounts invoiced by FEI for each vehicle upfitted with the ReeferTek System (§3.1); and maintain books and records in order to account for all sales and vehicle conversions (§3.3).

42.     The License Agreement entitles RT to recover from FEI attorneys' fees in the event RT undertakes legal action to collection unpaid license payments. (§3.5).

43.     In the License Agreement, Defendants expressly acknowledged that RT has the exclusive right, title, and interest in the ReeferTek Trademarks, other intellectual property

licensed or provided to FEI, and all associated goodwill, and that FEI has, and will have, no rights in same except for the limited revocable license granted in the License Agreement. (§§5.4-5.6)

44.      Finally, in the License Agreement, Defendants expressly acknowledged that a breach of the License Agreement would result in immediate and irreparable damage to RT, and that RT may, in addition to all other remedies available to it, "immediately obtain and enforce injunctive relief prohibiting the breach or compelling specific performance" of the License Agreement.  (§9.1).

45.      Defendants initially complied with the License Agreement, including by reporting the upfitted vehicles and making payments in accordance with Sections 3.1 and 3.3 of the License Agreement.

46.      In effect, Defendants acknowledged the validity of, and their obligations under, the License Agreement.

## Defendants' Wrongful Acts

**Unfair Competition, False Designation of Origin, and Breach of Contract**

47.      FEI and Fuchs have damaged RT by, *inter alia*, violating the Lanham Act, New York law, breaching the agreements with RT and engaging in tortious activities directed to RT and Leibman.

48.      Said wrongful acts include, but are not limited to the following:

A.      Marketing and selling conversion products using ReeferTek Trademarks outside the FEI Territory, including without limitation at industry trade shows and expositions;

B.      Holding FEI and Fuchs out to the public, other RT licensees, and potential customers as "the real" ReeferTek, to the exclusion of RT and Leibman.

- 9 -

C.      Altering the ReeferTek Trademarks and appending other marks to them without permission;

D.      Modifying the ReeferTek System without permission of RT;

E.      Failing to purchase all components of the ReeferTek System from RT;

F.      Failing to attach the ReeferTek Trademarks to vehicles upfitted using the ReeferTek System;

G.      Attaching the ReeferTek Trademarks to products that do not use the ReeferTek System or that use ReeferTek System improperly modified by Defendants in violation of the License Agreement; and

H.      Otherwise marketing and selling conversion products and converted vehicles to the public that purport to be the ReeferTek System conversions that are not in fact ReeferTek System conversions.

49.     In addition to the foregoing, FEI and Fuchs also breached the License Agreement by, among other things, failing to account for vehicle conversions, refusing to provide to FEI books and records, and refusing to pay the contractual license payments.

50.     In an attempt to obfuscate the foregoing breaches of the License Agreement, including the misuse of the ReeferTek Trademarks, Defendants engaged in efforts to actively conceal from RT the number and identity of the vehicles upfitted pursuant to the License Agreement.  For example, Defendants failed to report Vehicle Identification Numbers of converted vehicles and, upon information and belief, solicited and received cash payments from customers, which payments were not reflected in Defendants' records and not included in the license payments.

- 10 -

51.     In addition, defendants engaged in vehicle upfitting business under an alternative name of "Cool Fox Trucks" so as to deprive RT of its license payments and evade the geographic restrictions imposed by the License Agreement.

52.     Specifically, vehicles converted by "Cool Fox Trucks" featured the ReeferTek Trademarks and technology.  Upon information and belief, Defendants used the ReeferTek Trademarks in soliciting business and customers for "Cool Fox Trucks" and also used the ReeferTek System in connection with business conducted through "Cool Fox Trucks."  Yet, Defendants failed to report, or pay license fees, to RT based on the conversions performed by "Cool Fox Trucks."

53.     Based upon the foregoing, on or about July 6, 2015 RT gave FEI a notice of default, attached as Exhibit B.

54.     FEI did not cure the default within the 30 day cure period.

55.     Accordingly, by letter dated August 7, 2015, RT terminated the License Agreement thereby ending all of Defendants' rights under the License Agreement, including the right to market, sell or hold themselves out in any capacity as related to or affiliated with RT or ReeferTek.  A copy of the termination notice is attached hereto as Exhibit C.

56.     Notwithstanding the termination, FEI failed to cease using the ReeferTek Trademarks and technology.

57.     In response to the termination letter, in a lawyer's letter FIE denied that it breached the License Agreement.  However, lawyer acknowledged specific facts underlying FEI's breaches of the License Agreement, including:

        A.      Contracting and marketing outside the FEI Territory; and

        B.      Modifying re-designing the ReeferTek system without permission.

58.     Upon information and belief, despite the termination of the License Agreement, Defendants have failed to discontinue the use of ReeferTek Trademarks, both within and outside of the FEI Territory, and have failed to take other steps required by the License Agreement upon its termination.

**Defendants' Tortious Activity**

59.     Separate and apart from the breach of the License Agreements, Fuchs and FEI committed other wrongful acts directed to RT and Leibman personally, designed to injure their business reputation and goodwill among the public in general, other RT licensees, and customers of RT and of other RT licensees.

60.     For example, Fuchs and FEI made false statements to third parties, including to at least one other RT licensee, that RT and Leibman received "kickbacks" from automotive manufacturers and dealers for conversion jobs.

61.     Fuchs and FEI also slandered RT and Leibman by disseminating to the public in general, other RT licensees, and customers of RT and of other RT licensees (i) that RT, as owned and operated by Plaintiffs, was no longer in business; (ii) that the Defendants were "the real" ReeferTek; and (iii) that the products and services marketed by the Defendants were the only ones entitled to use the ReeferTek name, such that RT and its other licensees had no right to use it.

62.     The aforementioned statements about RT and Leibman were false, known to the Defendants to be false, and disseminated with the intent to injure RT and Leibman.

63.     The foregoing false statements were *per se* defamatory.

64.     The foregoing false statements injured Plaintiffs by undermining and tarnishing their business reputation and inducing customers and other parties not to do business with Plaintiffs and/or other RT licensees.

- 12 -

65.     Fuchs and FEI acted with malice to harm RT and Leibman, interfere with their business relationships with existing and potential future licensees and customers, destroy Plaintiffs' goodwill and reputation in order to discourage others from dealing with Plaintiffs, and allow Defendants to capture that business for themselves.

## COUNT ONE

### (False Designation of Origin, False Advertising, and Unfair Competition in Violation of 15 U.S.C. § 1125(a))

66.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 65 of this Complaint and incorporate them herein by reference.

67.     Defendants have engaged in acts constituting unfair competition, false designation of origin, and false advertising in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

68.     By using the ReeferTek Trademarks beyond the scope permissible under the License Agreement, and/or using marks confusingly similar to the ReeferTek Trademarks, notwithstanding RT's prior rights in the ReeferTek Trademarks, Defendants have made and are making false and/or misleading representations that their products originate with, are approved or endorsed by, or are otherwise affiliated or connected with RT in such a manner as to create a likelihood of confusion among prospective purchasers.

69.     Defendants' use of the ReeferTek Trademarks beyond the scope permissible under the License Agreement, and/or use of marks confusingly similar to the ReeferTek Trademarks constitutes a false designation of origin within the meaning of 15 U.S.C. § 1125(a). Defendants' express or implied representations that the sale of their products originate with, or are approved or endorsed by, RT constitute use of false descriptions or representations of fact within the meaning of 15 U.S.C. § 1125(a).

70.     RT has been damaged by Defendants' conduct, and Defendants' use of names and marks identical and confusingly similar to those of RT constitutes unfair competition, entitling RT to remedies afforded pursuant to 15 U.S.C. § 1125(a).

71.     Defendants' acts of false designation of origin and false advertising have caused or are likely to cause RT irreparable injury.  Unless enjoined by this Court, Defendants will continue these acts of infringement to RT's and the public's immediate and irreparable damage.

72.     RT is entitled to injunctive relief and damages in an amount to be proven at trial, together with attorneys' fees.

## COUNT TWO

### (Breach of Contract)

73.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 72 of this Complaint and incorporate them herein by reference.

74.     A binding contract, including by virtue of the License Agreement, existed between RT and FEI.

75.     FEI breached the contract with RT by, among other things:

A.     Failing to pay the contractual license payments;

B.     Failing to account for vehicle conversions;

C.     Refusing to provide to RT books and records for inspection and otherwise concealing the actual number of converted vehicles, including by soliciting and receiving cash payments from customers and by operating clandestinely under the name "Cool Fox Trucks;"

D.     Marketing and selling conversion products using ReeferTek Trademarks outside the FEI Territory, including without limitation at industry trade shows and expositions;

E.     Holding FEI and Fuchs out to the public, other RT licensees, and potential customers as "the real" ReeferTek, to the exclusion of RT and Leibman.

F.     Altering the ReeferTek Trademarks and appending other marks to them without permission;

G.     Modifying the ReeferTek system without permission of RT;

H.     Failing to purchase all components of the ReeferTek System from RT;

I.      Failing to attach the ReeferTek Trademarks to vehicles upfitted using the ReeferTek System;

J.      Attaching the ReeferTek Trademarks to products that do not use the ReeferTek System or that use ReeferTek System improperly modified by Defendants in violation of the License Agreement;

K.     Otherwise marketing and selling conversion products and converted vehicles to the public that purport to be the ReeferTek System conversions that are not ReeferTek System conversions; and

L.     Continuing to use the ReeferTek Trademarks and the ReeferTek name despite the termination of the License Agreement.

76.    FEI's breaches of the contract injured RT.

77.    RT is entitled to injunctive relief, specific performance of the License Agreement, and damages in an amount to be proven at trial, together with attorneys' fees.

## COUNT THREE

### (Defamation)

78.    Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 77 of this Complaint and incorporate them herein by reference.

79.    Fuchs and FEI made false statements to RT's licensees, potential customers of RT and of RT's licensees, and, upon information and belief, to others:

      A.      That RT and Leibman received "kickbacks" from automotive manufacturers and dealers to receive conversion jobs.  On at least one occasion Defendants made this false statement in to another RT licensee in writing and attached to the writing a document that Defendants falsely stated was a check by which the kickback payment was made;

      B.      That RT, as owned and operated by Plaintiffs, was no longer in business;

      C.      That the Defendants were "the real" ReeferTek; and

      D.      That the products and services marketed by the Defendants were the only ones entitled to use the ReeferTek name, such that RT and its other licensees had no right to use it.

80.      The aforementioned statements about RT and Leibman were false and were known to the Defendants to be false when made.

81.      Defendants made and disseminated the aforementioned statements with the intent to injure RT and Leibman by undermining their existing and prospective business relationships as well as the existing and prospective business relationships of other RT licensees.

82.      In making the foregoing statements, Fuchs and FEI acted with malice to harm RT and Leibman, interfere with their business relationships with existing and potential future licensees and customers, destroy Plaintiffs' goodwill and reputation in order to discourage others from dealing with Plaintiffs, and allow Defendants to capture that business for themselves.

83.      The foregoing false statements were *per se* defamatory.

84.      The foregoing false statements injured Plaintiffs by undermining and tarnishing their business reputation and inducing customers and other parties not to do business with Plaintiffs and/or other RT licensees.

85.     Defendants' conduct has caused and/or is likely to cause RT and Leibman irreparable injury, loss of reputation, and pecuniary damage.  Unless enjoined by this Court, Defendants will continue making these defamatory statements, thereby deceiving the public and causing RT further irreparable damage.

86.     RT and Leibman have been damaged by Defendants' unlawful conduct.

87.     RT is entitled to injunctive relief and damages in an amount to be proven at trial, together punitive damages.

<u>COUNT FIVE</u>

**(Common Law Trademark Infringement)**

88.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 87 of this Complaint and incorporates them herein by reference.

89.     Defendants have engaged in acts constituting common law trademark infringement under New York law.

90.     Defendants have advertised, marketed and sold products under the ReeferTek Trademarks beyond the scope permissible under the License Agreement without seeking RT's consent, thereby infringing the ReeferTek Trademarks.

91.     Defendants' use of marks that are identical and/or confusingly similar to the ReeferTek Trademarks to sell products similar to those that RT sells under those marks is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' products.

92.     Upon information and belief, Defendants' use of the ReeferTek Trademarks and/or marks confusingly similar to the ReeferTek Trademarks was calculated to deceive or confuse the public and to enable Defendants to profit unjustly from RT's goodwill.

93.     Defendants' conduct has caused and/or is likely to cause RT irreparable injury, loss of reputation, and pecuniary damage.  Unless enjoined by this Court, Defendants will

continue these acts of infringement, thereby deceiving the public and causing RT further irreparable damage.

94.     RT is entitled to injunctive relief and damages in an amount to be proven at trial, together with attorneys' fees.

## COUNT SIX

### (Common Law Unfair Competition)

95.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 94 of this Complaint and incorporates them herein by reference.

96.     Defendants have engaged in acts constituting common law unfair competition.

97.     Defendants' use of marks identical or confusingly similar to the ReeferTek Trademarks to sell products similar to those that RT sells under those marks falsely suggests that Defendants and their business and products are associated with, or are sponsored, licensed, or authorized by, RT.

98.     Upon information and belief, Defendants' use of marks that are identical and/or confusingly similar to the ReeferTek Trademarks was calculated to deceive or confuse the public and to enable Defendants to profit unjustly from RT's goodwill.

99.     Defendants' unfair competition has caused and/or is likely to cause RT irreparable injury, loss of reputation, and pecuniary damage.  Unless enjoined by this Court, Defendants will continue these acts of unfair competition, thereby causing RT and the public further irreparable damage.

100.     RT is entitled to injunctive relief and damages in an amount to be proven at trial, together with attorneys' fees.

## COUNT SIX

### (Declaratory Judgment)

101.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 100 of this Complaint and incorporates them herein by reference.

102.    An actual, ripe, and justiciable controversy has arisen between the parties regarding whether the License Agreement has been terminated by RT.  RT has given notice that the License Agreement has been terminated based on FEI's breaches detailed above, and FEI has denied that it has breached the License Agreement and has refused to take steps required upon the termination of the License Agreement.

103.    For the reasons stated above, RT is entitled to a declaratory judgment that the License Agreement has been terminated and FEI has no rights thereunder.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

A.    That a preliminary and a permanent injunction be issued enjoining the Defendants and each of their agents, servants, employees, and attorneys and those persons in active concert or participation with them:

1.    Making any false, disparaging, or defamatory statements about Plaintiffs or Plaintiffs' products and services, including the ReeferTek System.

2.    From using any of the ReeferTek Trademarks, or any mark similar thereto in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

3.    From using any logo, trade name or trademark which may be calculated to falsely represent or has the effect of falsely representing that the services or products of the Defendants are sponsored or authorized by, or in any way associated with, RT;

4.    From infringing the ReeferTek Trademarks;

- 19 -

5.     From otherwise unfairly competing with RT;

6.     From falsely representing themselves as being connected with RT or sponsored by or associated with RT or engaging in any act or allowing any acts which are likely to cause the trade, retailers and/or members of the purchasing public to falsely believe that the Defendants are associated with RT; and

7.     From affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being those of RT and from offering such goods in commerce.

B.     That the Defendants each be required to pay to Plaintiffs actual damages, the Defendants' profits, or lost profits and other damages suffered as a result of their intentional and willful misconduct in an amount to be determined at trial, including punitive damages.

C.     That Plaintiffs be awarded the costs of this action including all of their attorneys' fees.

D.     Declaring that the License Agreement has been terminated and FEI has no rights thereunder.

E.     That Plaintiffs be granted such other and further relief as the court deems just and proper.

Dated:   New York, New York          **ARENT FOX LLP**
         August 14, 2015

                                     By:   */s/ David N. Wynn*
                                            David N. Wynn
                                            Mark A. Angelov
                                            1675 Broadway
                                            New York, New York  10019
                                            (212) 484-3900

                                     *Counsel for Plaintiffs*